# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **MATTHEW R. HAMILTON**<br>4708 Ascot Drive<br>Columbus, OH 43229<br><br>and<br><br>**REBECCA A. HAMILTON**<br>4708 Ascot Drive<br>Columbus, OH 43229<br><br>     Plaintiffs,<br><br>  v.<br><br>**CARRINGTON MORTGAGE<br>SERVICES, LLC.**<br>c/o CT Corporation System<br>4400 Easton Commons Way, Suite 125<br>Columbus, OH 43219<br>     Defendant. | **Case No.**<br><br><br><br><br><u>**COMPLAINT**</u><br><br><br>**(DEMAND FOR A JURY TRIAL)** |

Plaintiffs Matthew R. Hamilton and Rebecca A. Hamilton, by and through counsel, for their Complaint against Defendant Carrington Mortgage Services, LLC states as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiffs Matthew Hamilton and Rebecca Hamilton (collectively, the "Hamiltons" or "Plaintiffs") are the owners of real property located at 4708 Ascot Drive, Columbus, Ohio 43229 (the "Home").

2. At all times relevant, the Hamiltons have maintained and currently maintain the Home as their primary, principal residence.

3. Defendant Carrington Mortgage Services, LLC ("Defendant" or "Carrington")

currently acts as a servicer of a note executed by Plaintiff Matthew A. Hamilton (the "Note") and a mortgage on the Home executed by the Hamiltons that purportedly secures the Note (the "Mortgage") (collectively referred to hereinafter as the "Loan").

4.      Effective February 15, 2017, servicing rights to the Loan transferred from Non-Party Ocwen Loan Servicing, LLC ("Ocwen") to Carrington.  Ocwen previously serviced the Loan from February 7, 2013 through February 14, 2017.

5.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), and the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq*. (RESPA).

6.      This action is filed to enforce regulations promulgated by the Consumer Finance Protection Bureau (CFPB) and implemented pursuant to section 6(f) of RESPA which became effective on January 10, 2014, specifically, 12 C.F.R. §§ 1024.35, 1024.36, and 1024.41 of Regulation X.

7.      Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as the Hamiltons maintain the Home as their primary residence within this District.

## **INTRODUCTION**

8.      Like many individuals, over the past decade the Hamiltons have experienced an economic hardship.  In an effort to save their Home and find a way  to continue to make reasonable payments on the Loan, the Hamiltons sought relief from Ocwen by seeking a modification under the Home Affordable Modification Program ("HAMP") in December of 2016.

9.      On or about February 15, 2017, servicing rights to the Loan transferred from Ocwen to Carrington while the Hamiltons' loss mitigation application was still pending with Ocwen.  Initially, the Hamiltons were hopeful that Carrington would, as required pursuant to the CFPB's Official Interpretations of 12 C.F.R. § 1024.41, review the application  submitted to Ocwen, which was still under review at the time of the servicing transfer.

10.     Unfortunately, Carrington failed to properly review the Hamiltons' loss mitigation application.

11.     Subsequently, the Hamiltons submitted a new loss mitigation application to Carrington.  Carrington, however, has failed to provide any proper response to the Hamiltons' loss mitigation application since such submission.

12.     To date, the Hamiltons still have not received a proper review of their loss mitigation application and Carrington has "dual-tracked" the Hamiltons by submitting an entry for  foreclosure judgment in the foreclosure action captioned or otherwise stylized as *Ocwen Loan Servicing, LLC v. Matthew R. Hamilton, et al.*, assigned Case No. 15 CV 009244 in the Court of Common Pleas for Franklin County, Ohio (the "Foreclosure").   A judgment was subsequently entered in the Foreclosure which  caused need for the Hamiltons to file a Notice of Appeal of such  in May of 2017 (the "Appeal").

13.     The Hamiltons, by and through counsel, have been forced to continue to defend the Foreclosure despite having a loss mitigation application pending with Carrington.   If Carrington had simply done its job, the judgment entry in the Foreclosure would have been withheld  and the Appeal would  not have been necessary.

3

14.     In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

15.     Specifically, on January 17, 2013, the CFPB issued the RESPA (Regulation X) Mortgage Servicing Final Rules, 78 F.R. 10695 (February 14, 2013), which became effective on January 10, 2014.

16.     The Loan is a "federally related mortgage loan" as defined by 12 C.F.R. § 1024.2(b).

17.     Carrington is subject to the aforesaid Regulations and does not qualify for the exception for "small servicers", as defined in 12 C.F.R. § 1026.41(e)(4), nor the exemption for a "qualified lender", defined in 12 C.F.R. § 617.7000.

18.     The Hamiltons have a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f) for the claimed breaches which provides for remedies including actual damages, costs, statutory damages, and attorneys' fees.

19.     The Hamiltons are asserting a claim for relief against Carrington for violations breaches of 12 C.F.R. §§ 1024.35, 1024.36, and 1024.41 under Regulation X as set forth, *infra*.

## BACKGROUND

20.     On December 29, 2016, the Hamiltons submitted a loss mitigation application to Ocwen via facsimile transmission (the "Initial Submission") through their counsel DannLaw formerly doing business as The Dann Law Firm Co., L.P.A. ("DL") (. A true and accurate copy of the facsimile cover page for the Initial Submission, which outlines the documents constituting

4

the Initial Submission, is attached as *Plaintiffs' Exhibit 1*.

21.    On December 30, 2016 Ocwen sent correspondence acknowledging receipt of the Initial Submission ("Acknowledgment #1").  A true and accurate copy of Acknowledgement #1 is attached as *Plaintiffs' Exhibit 2*.  Acknowledgement #1 did not request additional documents from the Hamiltons.  See *id.*

22.    On or about January 3, 2017 Ocwen sent additional correspondence acknowledging receipt of the Initial Submission ("Acknowledgment #2").  A true and accurate copy of Acknowledgement #2 is attached as *Plaintiffs' Exhibit 3*.  Ocwen  failed to request additional documents from the Hamiltons by and through Acknowledgment #2 .  See *id.*

23.    On January 5, 2017 and January 19, 2017, Ocwen sent correspondence requesting additional documents necessary to complete the Hamiltons' loss mitigation application to the wrong address ("Ocwen Request #1").  True and accurate copies of the letters comprising Ocwen Request #1 are attached as *Plaintiffs' Exhibit 4* and *5*.

24.    The Hamiltons' correct mailing address is the same as the address for the Home.

25.    DL's correct mailing address is P.O. Box 6031040, Cleveland, OH 44103

26.    Ocwen Request #1, however, was incorrectly addressed to: "270 Bradenton Ave., Suite 100, Dublin, OH 43017.  See *Id.* .

27.    On January 27, 2017 Ocwen sent correspondence noticing the transfer of servicing rights to the Loan to Carrington effective February 15, 2017 to the wrong address.  A true and accurate copy of the January 27, 2017 correspondence is attached as *Plaintiffs' Exhibit 6.*

28.    Since Ocwen Request #1 was sent to the wrong address, the Hamiltons were

unaware that Ocwen required additional documents for their pending loss mitigation application. Accordingly, on February 7, 2017, the Hamiltons, by and through counsel, sent Ocwen correspondence captioned "Re: Notice of error pursuant to 12 C.F.R. §1024.35(b)(11) for violation of 12 C.F.R. § 1024.41(b)(2)(i)" via Certified U.S. Mail [Receipt No. 7014 2120 0003 0780 0555] (the "NOE") alleging that Ocwen committed an error for by failing to acknowledge the Initial Submission. A true and correct copy of the NOE is attached as *Plaintiffs' Exhibit 7*.

29.     Ocwen received the NOE on or about February 13, 2017 at approximately 3:42 a.m. A copy of the "Product & Tracking Information" from USPS's website (www.usps.com) for the NOE is attached as *Plaintiffs' Exhibit 8*.

30.     On February 14, 2017, Dale Harding, a legal secretary with Clunk, Paisley, Hoose Co., LPA, counsel for the plaintiff in the Foreclosure ("Foreclosure Counsel"), sent email correspondence to DL, the Hamiltons' counsel, ), requesting additional documents necessary for the Hamiltons' pending loss mitigation application ("Ocwen Request #2). A true and accurate copy of Ocwen Request #2 is attached as *Plaintiffs' Exhibit 9*.

31.     Ocwen Request # 2 requested the following information:

> Borrower has mentioned bonus income on financial form and we have received paystubs. However it does not reflect BONUS pay so require written clarification for the same or employer letter with GYTD and NYTD income including the BONUS income.

See *id.*

32.     The following day, on February 15, 2017, servicing rights to the Loan transferred to Carrington. See *Plaintiffs' Exhibit 6*.

33.     Upon information and belief, at the time of the servicing transfer Ocwen transferred the loss mitigation application documents submitted by the Hamiltons to Carrington in accordance with their presumed policies and procedures to do so, whose establishment is prescribed by 12 C.F.R. § 1024.38(b)(1).

34.     Also on February 15, 2017, Foreclosure Counsel prepared a proposed judgment entry for the Foreclosure.   A true and accurate copy of the February 15, 2017, proposed judgment entry is attached as *Plaintiffs' Exhibit 10.*   The Hamilton's counsel immediately noted that a loss mitigation application was pending, and requested that Foreclosure Counsel take steps to avoid the entry of a judgment.

35.     Additionally, on February 15, 2017, the Hamiltons submitted any and all documents required pursuant to Ocwen Request #2 to Carrington ("Carrington Submission #1"). A true and accurate copy of Carrington Submission #1 is attached as *Plaintiffs' Exhibit 11.*

36.     On February 16, 2017 the Hamiltons submitted additional documents to Carrington by and through Foreclosure Counsel ("Carrington Submission #2") in an effort to provide supplemental information to Carrington regarding Matthew Hamilton's bonus income. A true and accurate copy of the cover page for Carrington Submission #2 is attached as *Plaintiffs' Exhibit 12.*

37.     On February 16, 2017, the Hamiltons sent email correspondence, by and through counsel, to Carrington, to Foreclosure Counsel, requesting that Carrington take steps to avoid the Foreclosure moving forward and/or by filing the proposed judgment entry provided to DL on or about February 15, 2017 pursuant to 12 C.F.R. §1024.41(g).   A true and accurate copy of the

7

February 16, 2017 email correspondence is attached as *Plaintiffs' Exhibit 13*.

38.    Additionally, on or about February 16, 2017, the Hamiltons finally received Ocwen Request #1 from their former counsel. See *Plaintiffs' Exhibit 2*. The notice requested that the Hamiltons "[p]lease provide a letter from your employer specifying that the overtime, commission, or bonus income you are receiving will likely continue. See *id.*

39.    On February 23, 2017, Ocwen sent correspondence to the Hamiltons, by and through DL, stating that they were transferring the Hamiltons' loss mitigation application to Carrington. A true and accurate copy of the February 23, 2017 correspondence are attached as *Plaintiffs' Exhibit 14*.

40.    On February 27, 2017 the Hamiltons submitted any and all information required pursuant to Ocwen Request #1 to Carrington believing that Carrington would likely need such information as well ("Carrington Submission #3").

41.    On February 27, 2017, Foreclosure Counsel sent email correspondence stating that they would send Carrington Submission #3 to their client. A true and accurate copy of the email thread that contains Carrington Submission #3 and the February 27, 2017 email correspondence from Foreclosure Counsel is attached as *Plaintiffs' Exhibit 15*.

42.    On or before February 27, 2017 Foreclosure Counsel filed the proposed judgment entry with the judge in the Foreclosure. This action was taken despite the Hamiltons requesting that Carrington take steps to avoid the Foreclosure pursuant to 12 C.F.R. §1024.41(g). See *Plaintiffs' Exhibit 13*.

43.    On March 10, 2017, Carrington sent correspondence requesting additional

documents necessary to complete the Hamiltons' loss mitigation application ("Carrington Request #1"). A true and accurate copy of the Carrington Request #1 is attached as *Plaintiffs' Exhibit 16*. At no point prior to this date did Carrington request any corrective or supplemental information or documents from the Hamiltons.

44. Carrington Request #1 was incorrectly addressed and therefore was not sent to the proper address for the Hamiltons' or DL. See *id*.

45. On March 15, 2017, Foreclosure Counsel filed a motion in the Foreclosure requesting that the trial scheduled for March 22, 2017 be continued as there is a "Judgment Entry and Decree of Foreclosure pending before" the court in the Foreclosure. A true and accurate copy of the March 15, 2017 motion is attached as *Plaintiffs' Exhibit 17*.

46. On March 20, 2017, Foreclosure Counsel sent email correspondence to the Hamiltons, by and through DL, to which Carrington Request #1 was attached. A true and accurate copy of the March 20, 2017 email correspondence is attached as *Plaintiffs' Exhibit 18*. Carrington Request #1 required that the necessary documents be submitted no later than April 9, 2017. See *Plaintiffs' Exhibit 17*.

47. On April 7, 2017, the Hamiltons submitted to Carrington any and all required documents pursuant to Carrington Request #1, by and through Foreclosure Counsel ("Carrington Submission #4"). A true and accurate copy of the cover page for Carrington Submission #4 is attached as *Plaintiffs' Exhibit 19*.

48. Despite the Hamiltons submitting Carrington Submission #1, Carrington Submission #2, and Carrington Submission #3 back in February of 2017, Carrington took no

steps to prevent a Foreclosure judgment entry from being executed and entered against the Hamiltons on April 11, 2017. A printout of the Foreclosure docket is attached as *Plaintiffs' Exhibit 20*. The Hamiltons subsequently were caused to spend additional money on legal fees in order to file the Appeal. A printout of the Appeal docket is attached as *Plaintiffs' Exhibit 21*.

49.     Due to Carrington's conduct, the Hamiltons have lived with anxiety and stress caused by fear, becoming more concerning by the day, that they would lose the Home to foreclosure without ever receiving a fair, timely review of their loss mitigation application.

50.     Carrington's wrongful and willful actions have caused the Hamiltons' to suffer great emotional distress driven by the fear and uncertainty about whether they will lose their home.

51.     Carrington's actions have caused the Hamiltons to spend money on legal fees in order to defend aspects of the Foreclosure and to file the Appeal of the foreclosure judgment due to Carrington's failure to comply with their obligations under Regulation X to review the Hamiltons' eligibility for available loss mitigation options.

52.     Had Carrington acted properly, Foreclosure Counsel would have taken steps to prevent the Foreclosure judgment while the Hamiltons' loss mitigation application was under review for a loan modification which would have prevented them from suffering from the continued fear, suffering, and legal fees they were forced to endure and incur because of the Foreclosure judgment and eventual Appeal of such.

53.     At the time of the filing of this Complaint, Carrington has had at least Seven Hundred Seventy Two (772) consumer complaints lodged against them nationally, specifically

concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" concerning mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database. (https://www.consumerfinance.gov/data-research/consumer-complaints/)

54.     As a direct and proximate result of Carrington's conduct, the Hamiltons have remained in an unnecessarily expansive financial and emotional limbo for longer than they would have had Carrington acted appropriately. Despite the Hamiltons' diligent efforts to reach out to Carrington, in a sincere attempt to seek a modification of their loan that would be affordable to them and enable them to return to the status of "mortgage paying citizens", Carrington failed to acknowledge the Hamiltons' loss mitigation application in a timely manner and subsequently review such application to determine the Hamiltons' eligibility for a loan modification.

55.     In addition, as a direct and proximate result of the delays caused by Carrington, the Hamiltons have continued to spend money on legal fees that would have been necessary had Carrington met their regulatory obligations to review the Hamiltons' submitted loss mitigation application which should have resulted in a modification of their loan.  In addition, the potential for the Hamiltons to pursue other legal avenues to resolve their mortgage loan issues, such as a chapter 13 bankruptcy or short sale has been delayed and made more difficult, if not impossible, due to increased arrearages on the Loan, as a direct and proximate result of the conduct of Carrington. Further, the severe anxiety and immense uncertainty that the Hamiltons' have been caused to live under due to the very real possibility of losing their home to foreclosure has

caused them substantial emotional distress.

### COUNT ONE: AGAINST CARRINGTON
### VIOLATION OF 12 C.F.R. § 1024.41(b)(2)(i)(B)

**(Failure to timely acknowledge Carrington Submission #1, Carrington Submission #2, and Carrington Submission #3)**

56.     The Hamiltons restate and incorporate herein each of their statements and allegations contained in paragraphs 1 through 55 in their entirety, as if fully rewritten herein.

57.     12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. §2605(f))".

58.     12 C.F.R. § 1024.41(b)(2) provides that "[i]f a servicer receives a loss mitigation application 45 days or more before a foreclosure sale, a servicer shall: (A) Promptly upon receipt of a loss mitigation application, review the loss mitigation application to determine if the loss mitigation application is complete; and (B) Notify the borrower in writing within 5 days (excluding legal public holidays, Saturdays, and Sundays) after receiving the loss mitigation application that the servicer acknowledges receipt of the loss mitigation application and that the servicer has determined that the loss mitigation application is either complete or incomplete. If the loss mitigation application is incomplete, the notice shall state the additional documents and information the borrower must submit to make the loss mitigation application complete and the applicable date pursuant to paragraph (2)(ii) of this section."

59.     Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.41(b)(3) provides that if no foreclosure sale is scheduled as of the date a loss mitigation application is received, the application is considered to have been received more than ninety (90)

12

days before any foreclosure sale.

60.     At no point in time during which Carrington held the servicing rights for the Loan was a foreclosure sale scheduled.

61.     On or about February 15, 2017 servicing transferred from Ocwen to Carrington. See *Plaintiffs' Exhibit 6*.

62.     On or about February 15, 2017 the Hamiltons, by and through DL, sent Carrington Submission #1 to Carrington, by and through Foreclosure Counsel via email transmission. See *Plaintiffs' Exhibit 11*.

63.     Carrington Submission #1 contained any and all documents and information requested by and through Ocwen Request #2.  See *Plaintiffs' Exhibit 9* and *11*.

64.     Carrington received Carrington Submission #1 on or about February 15, 2017. See *id*.

65.     On or about February 16, 2017, the Hamiltons received Ocwen Request #1 from their former foreclosure counsel.  Ocwen Request #1 required that the Hamiltons provide a letter from their employer regarding Matthew Hamilton's bonus income.  See *Plaintiffs' Exhibit 4*.

66.     On February 16, 2017, the Hamiltons submitted Carrington Submission #2 to to Carrington via email correspondence to Foreclosure Counsel in an effort to comply with Ocwen Request #1.  See *Plaintiffs' Exhibit 12*.

67.     On February 23, 2017 Ocwen sent correspondence to the Hamiltons, by and through DL, stating that they were transferring the Hamiltons' pending loss mitigation application to Carrington.  See *Plaintiffs' Exhibit 14*.

68.     On February 27, 2017 the Hamiltons submitted Carrington Submission #3 to Carrington.   See *Plaintiffs' Exhibit 15*.   Carrington Submission #3 contained any and all documents required pursuant to Ocwen Request #1.  See *Plaintiffs' Exhibit 4* and *15*.

69.     Carrington Submission #1, Carrington Submission #2, and Carrington Submission #3, along with the pending application with Ocwen that, upon information and belief, was transferred at the transfer of servicing of the Loan to Carrington, constituted a loss mitigation application pursuant to 12 C.F.R. § 1024.41.

70.     Within five (5) days, excluding legal public holidays, Saturdays, and Sundays, of February 27, 2017, that is, on or before March 6, 2017, if not sooner, Carrington was required to send the written notice required by 12 C.F.R. § 1024.41(b)(2)(i)(B) to the Hamiltons.

71.     Carrington failed to send the written notice required by 12 C.F.R. § 1024.41(b)(2)(i)(B) to the Hamiltons on or before March 6, 2017.

72.     Carrington's failure to send the written notice required by 12 C.F.R. § 1024.41(b)(2)(i)(B) to the Hamiltons on or before March 6, 2017 constitutes a clear, separate, and distinct violation of 12 C.F.R. § 1024.41(b)(2)(i)(B).

73.     Carrington's actions are part of a pattern and practice of behavior in conscious disregard for the Hamiltons' rights.

74.     In addition to the damages outlined, *supra*, Carrington's violation of 12 C.F.R. § 1024.41(b)(2)(i)(B) directly and proximately caused the Hamiltons to incur actual damages including but not limited to attorneys' fees. See *Plaintiffs' Exhibit 20 and 21*.

75.     As a result of Carrington's actions, Carrington is liable to the Hamiltons for actual

damages, statutory damages, costs, and attorneys' fees.

## COUNT TWO: AGAINST CARRINGTON
## VIOLATION OF 12 C.F.R. § 1024.41(g)

**(Failure to avoid a foreclosure judgment entry after Carrington Submission #1)**

76.      The Hamiltons restate and incorporate herein each of their statements and allegations contained in paragraphs 1 through 76 in their entirety, as if fully rewritten herein

77.      12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. §2605(f))".

78.      12 C.F.R. § 1024.41(b)(1) provides that "[a] servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application."

79.      Comment 4 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.41(b)(1)   provides that "[a]lthough a servicer has flexibility to establish its own requirements regarding the documents and information necessary for a loss mitigation application, the servicer must act with reasonable diligence to collect information needed to complete the application. Further, a servicer must request information necessary to make a loss mitigation application complete promptly after receiving the loss mitigation application. Reasonable diligence includes, without limitation, the following actions: …ii. Servicing for a mortgage loan is transferred to a servicer and the borrower makes an incomplete loss mitigation application to the transferee servicer after the transfer; the transferee servicer reviews documents provided by the transferor servicer to determine if information required to make the loss mitigation application complete is contained within documents transferred by the transferor servicer to the servicer…"

15

80.    12 C.F.R. § 1024.41(c)(2)(iv) provides that "[i]f a borrower submits all the missing documents and information as stated in the notice required pursuant to § 1024.41(b)(2)(i)(B), or no additional information is requested in such notice, the application shall be considered facially complete. If the servicer later discovers additional information or corrections to a previously submitted document are required to complete the application, the servicer must promptly request the missing information or corrected documents and treat the application as complete for the purposes of paragraphs (f)(2) and (g) of this section until the borrower is given a reasonable opportunity to complete the application. If the borrower completes the application within this period, the application shall be considered complete as of the date it was facially complete, for the purposes of paragraphs (d), (e), (f)(2), (g), and (h) of this section, and as of the date the application was actually complete for the purposes of paragraph (c). A servicer that complies with this paragraph will be deemed to have fulfilled its obligation to provide an accurate notice under paragraph (b)(2)(i)(B)."

81.    Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.41(c)(2)(iv) " requires a servicer to treat a facially complete application as complete for the purposes of paragraphs (f)(2) and (g) until the borrower has been given a reasonable opportunity to complete the application. A reasonable opportunity requires the servicer to notify the borrower of what additional information or corrected documents are required, and to afford the borrower sufficient time to gather the information and documentation necessary to complete the application and submit it to the servicer… If the borrower fails to complete the application within the timeframe provided under § 1024.41(c)(2)(iv), the application shall be considered

incomplete."

82.     12 C.F.R. § 1024.41(g) provides that "[i]f a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless: (1) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied; (2) The borrower rejects all loss mitigation options offered by the servicer; or (3) The borrower fails to perform under an agreement on a loss mitigation option."

83.     Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.41(g) provides that "[t]he prohibition on a servicer moving for judgment or order of sale includes making a dispositive motion for foreclosure judgment, such as a motion for default judgment, judgment on the pleadings, or summary judgment, which may directly result in a judgment of foreclosure or order of sale. A servicer that has made any such motion before receiving a complete loss mitigation application has not moved for a foreclosure judgment or order of sale if the servicer takes reasonable steps to avoid a ruling on such motion or issuance of such order prior to completing the procedures required by § 1024.41, notwithstanding whether any such action successfully avoids a ruling on a dispositive motion or issuance of an order of sale."

84.     At no point in time during which Carrington held the servicing rights for the Loan

17

was a foreclosure sale scheduled.

85.    As established, *supra*, within five (5) days, excluding legal public holidays, Saturdays, and Sundays, of February 27, 2017, that is, on or before March 6, 2017, if not sooner, Carrington was required to send the written notice required by 12 C.F.R. § 1024.41(b)(2)(i)(B) to the Hamiltons.

86.    As Carrington failed to timely send the notice written notice required by 12 C.F.R. § 1024.41(b)(2)(i)(B), no information or documentation was requested and through such notice in a timely manner and Carrington was deemed to be in possession of a facially complete loss mitigation as of March 6, 2017 at the latest.

87.    Since the Hamiltons' loss mitigation application was considered facially complete as of March 6, 2017, Carrington was required to take reasonable steps in order to avoid the issuance of a judgment in the Foreclosure  pursuant to 12 C.F.R. § 1024.41(g).

88.    Despite being in possession of a facially complete loss mitigation application as of March 6, 2017, Carrington and their Foreclosure Counsel failed to take any reasonable steps to in the intervening thirty-six (36) days to avoid the execution and entering of the judgment entry in the Foreclosure.  See *Plaintiffs' Exhibit 20*.

89.    Carrington's failure to take steps to avoid the judgement entry in the Foreclosure resulted in a violation of 12 C.F.R. § 1024.41(b)(10) which constitutes a clear, separate, and distinct violation of 12 C.F.R. § 1024.41(g).

90.    Carrington's actions are part of a pattern and practice of behavior in conscious disregard for the Hamiltons' rights.

91.     In addition to the damages outlined, *supra*, Carrington's violation of 12 C.F.R. § 1024.41(g) directly and proximately caused the Hamiltons to incur actual damages including but not limited to attorneys' fees. See *Plaintiffs' Exhibit 14 and Plaintiffs' Exhibit 15*.

92.     As a result of Carrington's actions, Carrington is liable to the Hamiltons for actual damages, statutory damages, costs, and attorneys' fees.

## COUNT THREE: AGAINST CARRINGTON
## VIOLATION OF 12 C.F.R. § 12 C.F.R. § 1024.41(c)

**(Failure to promptly request missing information or corrected documents to complete a facially complete loss mitigation application after the supplementation of a loss mitigation application through Carrington Submission #4 or, alternatively, to fail to review a complete application within thirty (30) days)**

93.     The Hamiltons restate and incorporate herein each of their statements and allegations contained in paragraphs 1 through 55 in their entirety, as if fully rewritten herein.

94.     12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. §2605(f))".

95.     12 C.F.R. § 1024.41(b)(1) provides that "[a] servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application."

96.     12 C.F.R. § 1024.41(c)(2)(iv) provides that "[i]f a borrower submits all the missing documents and information as stated in the notice required pursuant to § 102[4].41(b)(2)(i)(B), or no additional information is requested in such notice, the application shall be considered facially complete. If the servicer later discovers additional information or corrections to a previously submitted document are required to complete the application, the servicer must promptly request the missing information or corrected documents and treat the application as

19

complete for the purposes of paragraphs (f)(2) and (g) of this section until the borrower is given a reasonable opportunity to complete the application."

97.    12 C.F.R. § 1024.41(c)(1) provides that "[i]f a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, then, within 30 days of receiving a borrower's complete loss mitigation application, a servicer shall:(i) Evaluate the borrower for all loss mitigation options available to the borrower; and (ii) Provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage. The servicer shall include in this notice the amount of time the borrower has to accept or reject an offer of a loss mitigation program as provided for in paragraph (e) of this section, if applicable, and a notification, if applicable, that the borrower has the right to appeal the denial of any loan modification option as well as the amount of time the borrower has to file such an appeal and any requirements for making an appeal, as provided for in paragraph (h) of this section."

98.    Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.41(b)(3) provides that if no foreclosure sale is scheduled as of the date a loss mitigation application is received, the application is considered to have been received more than ninety (90) days before any foreclosure sale.

99.    At no point in time during which Carrington held the servicing rights for the Loan was there a foreclosure sale scheduled.

100.    Carrington Request #1 acknowledged Carrington's receipt of Carrington Submission #1, Carrington Submission #2, and Carrington Submission #3 and stated that the

Hamiltons were required to submit missing, corrective, or supplemental information and documentation on or before April 9, 2017. See *Plaintiffs' Exhibit 11-12 and Plaintiffs' Exhibit 15-16*.

101.    In accordance with Carrington Request #1, on or about April 7, 2017, prior to the April 9, 2017 deadline, the Hamiltons, by and through counsel, submitted Carrington Submission #4 via e-mail transmission. See *Plaintiffs' Exhibits 16 and 19*.

102.    As of April 7, 2017, Carrington was either: (1) In possession of a complete loss mitigation application by and through their receipt of Carrington Submission #4 and therefore were obligated to review such application in accordance with the requirements of 12 C.F.R. § 1024.41(c)(1) within thirty (30) days of April 7, 2017, that is, on or before May 7, 2017; or, (2) in possession of a facially complete application and required pursuant to 12 C.F.R. § 1024.41(c)(2)(iv) to promptly request the missing information or corrected documents that were subsequently discovered to be needed from the Hamiltons. See *Exhibits 16 and 19*.

103.    Rather than perform either of the aforementioned actions upon receipt of Carrington Submission #4, Carrington has allowed the passage of approximately sixteen (16) weeks between the Hamiltons' submission of Carrington Submission #4 and the date of drafting the instant Complaint. Carrington took no further actions in regards to the loss mitigation application that was pending at the time servicing transferred from Ocwen to Carrington and presumably completed by and through the submission of Carrington Submission #4. See *Id*.

104.    Carrington's failure to either review the complete loss mitigation application comprised of Carrington Submission #1, Carrington Submission #2, Carrington Submission #3,

and Carrington Submission #4 or to promptly review the same and promptly request any missing information or corrective documents constitutes a clear, separate, and distinct violation of 12 C.F.R. § 1024.41(c).

105.    Carringtons' actions are part of a pattern and practice of behavior in conscious disregard for the Hamiltons' rights.

106.    In addition to the damages outlined, *supra*, Carrington's violation of 12 C.F.R. § 1024.41(b)(2)(i)(B) directly and proximately caused the Hamiltons to incur actual damages including but not limited to attorneys' fees. See *Plaintiffs' Exhibit 20 and 21*.

107.    As a result of Carrington's actions, Carrington is liable to the Hamiltons for actual damages, statutory damages, costs, and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Matthew R. Hamilton and Rebecca A. Hamilton pray that this Court enter its order granting judgment in their favor as follows:

A)    A finding that Carrington committed multiple violations of 12 C.F.R. § 1024.41 as alleged in Counts One through Three;

B)    For actual damages in an amount to be determined at trial as to each and every count;

C)    For costs, and reasonable attorneys' fees;

D)    For statutory damages against Carrington in the amount of Two Thousand Dollars ($2,000.00) as to each violation of 12 C.F.R. §1024.41, as alleged by and through Counts One through Three;

E)    Such other relief which this Court may deem appropriate.

Respectfully submitted,

*/s/ Marc E. Dann*
Marc E. Dann (0039425)

Daniel M. Solar (0085632)
Emily White (0085662)
**DANNLAW**
P.O. Box 603104
Cleveland, OH 44103
Telephone: (216)373-0539
Facsimile: (216)373-0536
notices@dannlaw.com
*Counsel for Plaintiffs Matthew R. Hamilton*
*and Rebecca A. Hamilton*

## JURY DEMAND

Plaintiffs hereby request a trial by jury on all issues, with the maximum number of jurors permitted by law.

*/s/ Marc E. Dann*
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Emily White ()
**DANNLAW**
*Counsel for Plaintiffs Matthew R. Hamilton*
*and Rebecca A. Hamilton*